UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| GLORIA MAE WILLIAMS, on behalf of herself and all others similarly situated | : | DOCKET NO. 2:06-cv-562 |
| VS. | : | JUDGE TRIMBLE |
| UNION PACIFIC RAILROAD CO., et al. | : | MAGISTRATE JUDGE KAY |

### REPORT AND RECOMMENDATION

Pending before the court is lead plaintiff's Motion for Class Certification [Doc. 46] filed by Gloria Mae Williams. Having considered the motion, submissions, and applicable law, the court recommends that the motion for class certification should be DENIED.

### I.
### BACKGROUND

On March 1, 2006, Gloria Mae Williams filed the above captioned suit as a class action in the Fourteenth Judicial District Court of the Parish of Calcasieu, State of Louisiana. Doc. 3. The action was removed to federal court pursuant to 28 U.S.C. §§ 1331 and 1441(b). Doc. 8.

The suit arises out of a release of anhydrous ammonia from a railroad tank car located at the Union Pacific North Siding Yard in Lake Charles, Louisiana. Doc. 3, ¶ 2; Doc. 68, at 1. Plaintiff asserts that the release of the gas and actions taken by the defendants following that release give rise to multiple causes of action, all sounding in tort. Doc. 3, ¶¶ 11-24. Specifically, plaintiff, on behalf of herself and the proposed class, seeks to recover compensatory damages "including, but not limited to" alleged "personal injury, fear and fright; loss of earnings and other

1

economic injuries; aggravation to pre-existing physical and/or mental conditions; interruption of, or intrusion into, their personal lives; lost profits and/or intangible business interruption losses, or [for those] who incurred expenses and/or damages to real property by reason of the release of large quantities of anhydrous ammonia from [] Union Pacific/Terra Mississippi Nitrogen, Inc.[] railroad car GATX078023 on December 26, 2004 at or around 9 p.m." Doc. 3, ¶ 2.

## II.
## PLAINTIFF'S PROPOSED CLASS

Plaintiff moves to certify the following class:

> All persons living or visiting a residence or place of business, within a one (1) mile radius of the Union Pacific Lake Charles North Siding Yard located off 100 South Shattuck Street, Latitude 30.238000 Degrees North, 93.1963330 Degrees West, in City of Lake Charles, Parish of Calcasieu, State of Louisiana, on December 26, 2004 between the hours of four o'clock p.m. and midnight.

## III.
## DEFENDANTS' OPPOSITION TO CLASS CERTIFICATION

Defendants argue that class certification is inappropriate because plaintiffs cannot establish that the claims are so numerous as to make joinder impracticable or that the proposed representative will fairly and adequately protect the class. Doc. 68, at 19-24. Defendants also argue that plaintiff cannot establish that common issues predominate over individual issues. *Id.* at 26-27.

## IV.
## CLASS CERTIFICATION UNDER RULE 23

A plaintiff seeking certification of a proposed class must meet four basic requirements under Fed. R. Civ. P. 23(a): numerosity, commonality, typicality, and adequacy. *Vizenza v.*

*Union Pac. R.R. Co.*, 360 F.3d 496, 502 (5th Cir. 2004). Additionally, as plaintiffs seek to certify the class under Rule 23(b)(3), they must demonstrate that "common issues predominate and that class treatment is the superior method to resolve the dispute." *Lehocky v. Tidel Technologies, Inc.*, 220 F.R.D. 491, 498 (S.D. Tex. 2006) (citing Fed. R. Civ. P. 23(b)(3)).

Although it is a plaintiff's burden to demonstrate to the court that the requirements of Fed. R. Civ. P. 23 are met, it is the court's duty to "'conduct a rigorous analysis of the rule 23 prerequisites before certifying a class.'" *Steering Comm. v. Exxon Mobile Corp.*, 461 F.3d 598, 601 (5th Cir. 2006). In conducting this analysis, the court contemplates how a trial on the merits would be conducted. *Lehocky*, 220 F.R.D. at 498 (citing *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 740 (5th Cir. 1996)).

The class certification inquiry is factual in essence. *Vizenza*, 360 F.3d at 502 (citing *Allison v. Citgo Petroleum Corp.,* 151 F.3d 402, 408 (5th Cir.1998)). In making the inquiry, the court takes the substantive allegations in the complaint as true, *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-78, 94 S. Ct. 2140, 2152-53, 40 L. Ed. 2d 732 (1974), but may look beyond the pleadings to "understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination of the certification issues." *Lehocky*, 220 F.R.D. at 498 (quoting *Castano*, 84 F.3d at 744)).

A. Rule 23(a) Requirements

1. *Numerosity*

The numerosity requirement is satisfied when the court finds that the class is so numerous that joinder of all members is impracticable. Fed. R. Civ. P. 23(a)(1). Considering the numerosity requirement, the Fifth Circuit has noted:

> The raison d'etre of the class suit doctrine is necessity, which in turn depends upon the question of number. This depends on the

> facts of each case and no arbitrary rules have been established, nor indeed should be. The basic question is practicability of joinder, not number of interested persons per se. Practicability of joinder depends on size of the class, ease of identifying its members and determining their addresses, facility of making service on them if joined and their geographic dispersion.

*Garcia v. Gloor*, 618 F.2d 264, 267 (5th Cir. 1980) (internal citations and quotations omitted); *see also Recinos-Recinos v. Express Forestry, Inc.*, 233 F.R.D. 472, 478 (E.D. La. 2006).

To meet her burden, plaintiff relies on four criteria. First plaintiff presents the testimony of defendants' meteorological and air modeling expert which states that humans are appropriate air monitors for the assessment of extent and concentration of an anhydrous ammonia plume. Doc. 46-1, at 6; Doc. 46-3, Exhibit 8, at 22-24, 73-76. Next plaintiff presents the sworn affidavits of fourteen individuals who claim to have had symptoms as a result of anhydrous ammonia exposure. These affidavits describe the location, time of exposure, and description of symptoms. Doc. 46-1, at 6; Doc. 48, Exhibit 9. Third, plaintiff presents a printout listing the names, symptoms, and location of 937 persons allegedly exposed to anhydrous ammonia accompanied by a map of their exposure points. Doc. 48, Exhibit 10. Finally plaintiff presents U.S. census data, which indicates that the population density within the City of Lake Charles is approximately 3,500 persons and 965 households within any one mile radius. Doc. 46-1, at 6, Doc. 48, Exhibit 10.

Plaintiff asserts that these numbers demonstrate the significant burden individual claims would place on the court system. Doc. 46-1, at 7. Additionally, plaintiff asserts that many of the class members are dispersed and that joinder would be impracticable. *Id.* at 8.

Defendants respond that the numerosity requirement cannot be fulfilled based on numbers alone. Doc. 68, at 19. Defendants also assert that plaintiffs have failed to identify class

members who have an actionable claim based on the actual impact of this incident.[1]  *Id.*

The court finds that plaintiff has established through "some evidence or reasonable estimate" the number of purported class members sufficiently to meet the numerosity requirement.  *Pederson v. La. State Univ.*, 213 F.3d 858, 868 (5th Cir. 2000).  Plaintiffs have demonstrated that the size of the class is at least the 937 persons identified by plaintiffs' Exhibit 8.  In light of those specifically identified and their geographic location (which is in some instances as much as a mile from the leak site, *see* Doc. 48, Exhibit 10), the court finds that the size of the class is sufficiently large.  *See Recinos-Recinos*, 233 F.R.D. at 478 (noting that the

---

[1] Part of the argument made by defendants appears to go to the question of whether a class exists.  Essentially, defendants argue that the affidavits submitted by plaintiff are insufficient to show any class member sustained an injury.  Doc. 54, at 2-25.  Thus, according to defendants, no class exists.

As discussed above, plaintiff has successfully identified the general outlines of a defined class.  "If the general outlines of the membership of the class are determinable at the outset of the litigation, a class will be deemed to exist."  7A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE & PROCEDURE § 1760 (3d ed. 1999, updated through 2008).

As to defendants arguments that plaintiffs have not shown any injury to an alleged class member, the Supreme Court has noted:  "We find nothing in either the language or history of Rule 23 that gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action. . . . This procedure is directly contrary to the command of subdivision (c)(1) that the court determine whether a suit denominated a class action may be maintained as such "'(a)s soon as practicable after the commencement of (the) action'"  *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178, 94 S. Ct. 2140, 2152 – 2153, 40 L. Ed. 2d 732 (1974).

The Fifth Circuit elaborated:

> *Eisen* did not drain Rule 23 of all rigor. A district court still must give full and independent weight to each Rule 23 requirement, regardless of whether that requirement overlaps with the merits.  The statement in *Eisen* is troublesome only if read without the light of its facts.  In *Eisen*, the district court's improper merits inquiry was unrelated to the Rule 23 requirements.  And the same was true in our *Miller* [*v. Mackey Intern., Inc.*, 452 F.2d 424 (5th Cir. 1971) decision, which was relied upon by *Eisen*, and which also held that a district court could not deny certification based on its view of the merits.  Both *Eisen* and *Miller* stand for the unremarkable proposition that the strength of a plaintiff's claim should not affect the certification decision.

*Oscar Private Equity Invs. v. Allegiance Telecom, Inc.*, 487 F.3d 261, 268 (5th Cir. 2007).

Here, defendants' assertions are unrelated to the Rule 23 requirements.  These assertions center around deposition testimony and call into question whether specific evidence has been submitted in proof of a small number of the total possible claims.  Doc. 68, at 21-25.  Defendants' analysis omits consideration of plaintiff's list of 937 persons alleging to have been harmed.  Doc. 48, Exhibit 10.

The court cannot deny that plaintiff has satisfied the numerosity requirement.  Whether a small group of persons could prove claims against defendants at this early stage of the litigation is an inappropriate consideration when other evidence suggests that a large class of persons with purported injuries exists.  A contrary finding would eviscerate the holding of *Eisen*, even when read in view of *Oscar*.

numerosity requirement may be met even for classes of less than one hundred where other factors suggest that numerosity is met).

Additionally, the court finds that, because class members may include those visiting the area for the holiday (the incident occurred on December 26), the potential geographic dispersion of class members is another factor in favor of finding the numerosity requirement met. The court takes note that for the most part the class members identified do live within the one mile radius area (making them easily determinable for facility of service if joined). This factor weighs against a finding of numerosity. *Garcia*, 618 F.2d at 267. However, because other criteria are satisfied, the court finds that the numerosity requirement has been met.

2. *Commonality*

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." "The threshold of 'commonality' is not high." *Bertulli v. Indep. Ass'n of Cont'l Pilots*, 242 F.3d 290, 296-97 (5th Cir. 2001) (citing *Jenkins v. Raymark Indus., Inc.*, 782 F.2d 468, 472 (5th Cir. 1986)). To satisfy the commonality requirement, "[t]he interests of the various plaintiffs need not be identical. Rather, the commonality requirement is met when there is 'at least one issue whose resolution will affect all or a significant number of the putative class members.'" *Forbush v. J.C. Penney Co.,* 994 F.2d 1101, 1106 (5th Cir. 1993) (quoting *Stewart v. Winter*, 669 F.2d 328, 335 (5th Cir. 1982)).

In the instant case, the commonality requirement is met. The proposed class of plaintiffs allege a discreet event, the release of anhydrous ammonia from rail car GATX078023, and that the conduct of defendants with respect to that event caused their injuries. Doc. 3; Doc. 46, at 7-8. Thus, the issue of liability is one common to the entire class of plaintiffs. Because there is an issue common to all putative class members, the commonality requirement is satisfied.

3. *Typicality*

Rule 23(a)(3) requires that the claims or defenses of the class representative be typical of the claims or defenses of the class. "Like commonality, the test for typicality is not demanding." *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 625 (5th Cir. 1999); *see also Gene & Gene, LLC v. Biopay, LLC*, 541 F.3d 318, 325. The typicality requirement protects class members from representation by a party who is preoccupied with an individually applicable defense because that defense could become the focus of litigation. *Warren v. Reserve Fund, Inc.*, 728 F.2d 741, 747 (5th Cir.1984); *Zachery v. Texaco Exploration & Prod., Inc.,* 185 F.R.D. 230, 240 (W.D. Tex. 1999). The "typicality" requirement focuses less on the relative strengths of the named and unnamed plaintiffs' cases than on the similarity of the legal and remedial theories behind their claims. *Jenkins v. Raymark Indus., Inc.*, 782 F.2d 468, 472 (5th Cir. 1986); *see Lehocky*, 220 F.R.D. at 500; *In re Vioxx Products Litigation*, 239 F.R.D. 450, 460 (E.D. La. 2006). The claims do not need to be identical. *Lehocky*, 220 F.R.D. at 500.

Here, the claims of lead plaintiff and the putative class are premised on the same event (the release of anhydrous ammonia) and legal theories (tort theories including strict liability and negligence). Additionally, the court does not find, and defendants do not advance, that the lead plaintiff is subject to any defense not applicable to the class as a whole. Accordingly, the court finds that the typicality requirement is satisfied.

4. *Adequacy*

The adequacy requirement requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The test for adequacy requires "an inquiry into (1) the zeal and competence of the representatives' counsel and (2) the willingness and ability of the representatives to take an active role in and control the litigation

and to protect the interests of absentees." *Berger v. Compaq Computer Corp.,* 257 F.3d 475, 479 (5th Cir. 2001).

Defendants do not allege that plaintiff's counsel lack zeal or are incompetent. Additionally the court's independent review finds that counsel meet these requirements. Specifically, two of three members of plaintiff's legal team (Marshall Simien and Perry Sanders) have extensive class action and toxic tort experience. Doc. 48, Exhibit 16.

"With respect to the class representatives, the class proponent must demonstrate that the interests of the class representatives 'are sufficiently aligned with those of the other class members.'" *Norwood v. Raytheon Co.*, 237 F.R.D. 581, 588 (W.D. Tex. 2006) (quoting *Jenkins v. Raymark Indus., Inc.*, 109 F.R.D. 269, 273 (E.D. Tex. 1985); *see also Mullen,* 186 F.3d at 625-26. Sufficient alignment exists when all class members are united in asserting a common right. *In re Corrugated Container Antitrust Litig.,* 643 F.2d 195, 208 (5th Cir. 1981); *Bertulli,* 242 F.3d at 298 n.33.

In the instant case, plaintiff argues that she meets the adequacy requirement because her claims are typical of those of the class. *See In re Vioxx Products Liability Litigation*, 239 F.R.D. at 460 (noting that the adequacy inquiry overlaps with the typicality inquiry because in the absence of typical claims the class representative has no incentive to pursue the claims of other class members). Specifically, plaintiff's Motion to Certify Class notes that:

> She owns residential property within the proposed geographic boundary of the anhydrous ammonia plume. Her property interest is harmonious with members of the class. She was exposed to anhydrous ammonia. Her involvement in this incident is harmonious with members of the class. She suffered immediate and debilitating symptoms as a result of her exposure. Her injuries suffered are harmonious with the class. She was forced to leave her home, which had become inundated with this toxic chemical. Her nuisance issues are harmonious with the class. Her recovery interest is harmonious with the class.

Doc. 46-1, at 10.

Defendants assert that plaintiff has failed to meet her burden. Defendants note that Ms. Williams is a 73 year old retiree who has not worked since 1955 and thus has no economic damages. Doc. 68, at 25-26 (citing Exhibit 11, at 9). Defendants also assert that because Ms. Williams is a homeowner, her interests are not aligned with those who are visitors. *Id*. at 26. Finally, defendants assert that "[b]ased on all the evidence in the class certification record, it is clear that Gloria Williams was not exposed to any meaningful levels of ammonia as a result of this incident. *Id* at 25.

The court finds that plaintiff has met the adequacy requirement in the instant case. Ms. Williams's claims for damages sufficiently overlap with the residents and visitors allegedly forming a class of persons affected by the anhydrous ammonia leak at issue. Ms. Williams and the unnamed class share the common situation of having allegedly been within the anhydrous ammonia plume and the common interest in discerning the liability issue in this case. Additionally, although Ms. Williams exhibits differences from some members of the proposed class, "[d]ifferences between named plaintiffs and class members render the named plaintiffs inadequate representatives only if those differences create conflicts between the named plaintiffs' interests and the class members' interests." *Mullen*, 186 F.3d at 626. The court does not discern (and defendants do not specify) how the differences between Ms. Williams and the other class members (including those who will claim economic damages and those who were visiting at the time of the incident) affects the alignment of their interest in the liability of the defendants.

Further, defendants assertion that Ms. Williams was not exposed to any meaningful levels of ammonia goes to the substantive allegations in the complaint. As discussed *supra* at note 1, the court is not in a position to evaluate the merits of Ms. Williams's claim of exposure and

resulting damages. *Oscar Private Equity Invs. v. Allegiance Telecom, Inc.*, 487 F.3d 261, 268 (5th Cir. 2007) (discussing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178, 94 S. Ct. 2140, 2152 – 2153, 40 L. Ed. 2d 732 (1974)). Whether Ms. Williams or an unnamed class member can succeed on their claims is a question that every class member will necessarily address. However, whether she will succeed or not, she meets the class definition and claims harm as a result of defendants' acts.[2] Accordingly, defendants assertion that Ms. Williams will not prevail on her allegations does not dissuade the court from finding that she will adequately represent the class.

The court finds that the adequacy requirement is satisfied.

B. Rule 23(b)(3) Requirements

Although a party seeking certification has established satisfaction of the requirements set out at Fed. R. Civ. P. 23(a), the class may not be certified unless they also establish that the action is maintainable under a subsection of 23(b). *Washington v. CSC Credit Servs. Inc.*, 199 F.3d 263, 265 (5th Cir. 2000). In the instant case, plaintiff seeks certification under 23(b)(3).

A party seeking class certification pursuant to 23(b)(3) must demonstrate that (1) questions common to the entire class predominate over questions affecting individual members and (2) class resolution is a superior to alternative methods for adjudication of the dispute. *Steering Comm.*, 461 F.3d at 601. These issues are commonly referred to as "predominance" and "superiority." *See, e.g.*, *Lehocky*, 220 F.R.D. at 504. At this stage of the consideration, the court must delve into the relevant claims, defenses, and substantive law in the case. *Steering Comm.*, 461 F.3d at 601 (citing *Castano*, 84 F.3d at 744).

---

[2] For this reason, the instant case contrasts with *East Texas Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395, 403-04, 97 S. Ct. 1891, 1896-97, 52 L. Ed. 2d 453 (1977), relied on by defendants. In *Rodriguez*, the court found that the plaintiff class representatives lacked the central characteristics required to fit within the class definition. *Id.* Here, Ms. Williams meets the class definition because she alleges to have been in the geographic boundary of the class at the time of the incident and to have suffered damages as a result. Whether, she ultimately prevails on her claims, she is similarly situated to all those she would represent.

1. *Predominance/Causation*

To satisfy the predominance requirement, a plaintiff must show that questions of law or fact predominate over any questions affecting individual members. *Unger v. Amedisys Inc.*, 401 F.3d 316, 320 (5th Cir. 2005). "The cause of action as a whole must satisfy Rule 23(b)(3)'s predominance requirement." *Steering Comm.*, 461 F.3d at 601 (citing *Castano*, 84 F.3d at 745 n.21). Although this requirement is similar to the "commonality" requirement of 23(a), the test for predominance is "far more demanding" because it "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623, 117 S. Ct. 2231, 2249 188 L. Ed. 2d 689 (1997).

The Fifth Circuit analyzed the predominance requirement in *Steering Committee v. Exxon Mobil Corp.*, 461 F.3d 598 (2006), a case with many similarities to the present one. In *Steering Committee*, individuals allegedly exposed to smoke from a fire at a chemical plant brought an action sounding in tort against the plant's owner, Exxon. Plaintiffs alleged "personal injury, personal discomfort and annoyance, emotional distress resulting from knowledge of exposure to hazardous substances, fear of future unauthorized exposures, and economic harm including damage to business and property." *Id.* at 600. Plaintiffs' proposed class included persons in the local geographic area who allegedly sustained damages as a result of the fire. *Id.* The district court denied certification of the class concluding that the individualized medical causation, injury, and damages issues dominated, making a class action an inappropriate vehicle for resolution. *Id.* at 602.

The district court concluded, based on expert testimony, that "the primary issues left to be resolved would turn on location, exposure, dose, susceptibility to illness, nature of symptoms, type and cost of medical treatment, and subsequent impact of illnesses on individuals." *Id.* The

11

court also observed that, in addition to the personal injury claims, separate types of proof would be necessary for the property damage, devaluation, and business loss claims. *Id.* The court noted the highly individualized nature of each plaintiff's claim with respect to proximate causation, "including individual issues of exposure, susceptibility to illness, and types of physical injuries." *Id.* As a result, the district court found that individual issues would dominate at a trial. *Id.* The court concluded that "one set of operative facts would not establish liability and that the end result would be a series of individual mini-trials which the predominance requirement is intended to prevent." *Id.*

Before the Fifth Circuit, plaintiff/appellants argued that "because the alleged injuries all arise from a single incident at the Exxon Mobil plant, the issues relating to Exxon Mobil's liability predominate over individual issues of causation and damages." *Id.* The court held that although the alleged cause of the injuries was a single incident, plaintiffs could not satisfy the predominance requirement for several reasons.

First, the damages claims were not subject to any sort of formulaic calculation because "[e]ach individual plaintiff suffered different alleged periods and magnitudes of exposure and suffered different alleged symptoms as a result. Some plaintiffs allege[d] both personal and property injuries, while others allege[d] only one or the other. Moreover, many plaintiffs allege[d] as part of their claim for compensatory damages emotional and other intangible injuries. 'The very nature of these damages, compensating plaintiffs for emotional and other intangible injuries, necessarily implicates the subjective differences of each plaintiff's circumstances; they are an individual, not class-wide, remedy. The amount of compensatory damages to which any individual class member might be entitled cannot be calculated by objective standards.'" *Id.* (quoting *Allison v. Citgo Petroleum Corp.,* 151 F.3d 402, 417 (5th Cir.

1998)). The court observed, "where individual damages cannot be determined by reference to a mathematical or formulaic calculation, the damages issue may predominate over any common issues shared by the class." *Id.* (citing *Bell Atlantic Corp. v. AT&T Corp.,* 339 F.3d 294, 306 (5th Cir. 2003)).

The instant case is sufficiently analogous to *Steering Committee* that the court finds that damages issues will predominate. Plaintiffs argue that "in the instant case, damage awards can and should be tiered based upon injuries suffered from having been exposed to the toxic chemical and suffering specific identifiable physical symptoms, to having to seek medical treatment, to the length and duration of medical treatment sought." Doc. 46-1, at 13. However, as in *Steering Committee*, the periods and magnitudes of exposure for individual plaintiffs will necessarily vary due to their dispersion at the time of the incident. Further, plaintiffs seek various intangible damages in this case, including compensation for emotional distress, pain and suffering, loss of wages or earning capacity, and loss of enjoyment of life. The Fifth Circuit has expressly held that these types of damages cannot be calculated by objective standards. *Steering Committee*, 461 F.3d at 602 (quoting *Allison,* 151 F.3d at 417).

The *Steering Committee* court also noted that, although the cause of the fire in the case was an issue common to the class, "each individual plaintiff must meet his or her own burden of medical causation, which in turn will depend on any number of . . . factors." *Id.* at 603. Those factors were individual issues of exposure, susceptibility to illness, and types of physical injuries. *Id.* In the instant case, the same factors must be considered. For this reason, the issue of medical causation will predominate.

Plaintiff suggests that in the event that the court finds that issues concerning medical causation and damages predominate, the court should bifurcate the trial, limiting class treatment

13

to liability issues with a separate trial for determination of causation and damages. Doc. 46-1, at 14. Plaintiff also proposes subclasses for persons claiming property, economic, physical, and mental damage. *Id.*

Taking up plaintiffs' second proposal first, the court has already noted the Fifth Circuit's holding that "'[t]he very nature of these damages, compensating plaintiffs for emotional and other intangible injuries, necessarily implicates the subjective differences of *each* plaintiff's circumstances; they are an *individual*, not class-wide, remedy.'" *Steering Committee*, 461 F.3d at 602 (emphasis added) (quoting *Allison,* 151 F.3d at 417). Because the nature of these damages is *individual*, even if plaintiffs are divided into subclasses, damages issues will still predominate.

With regard to plaintiff's suggestion that the court bifurcate the trial into two phases, the first of which would address the issues of liability and general causation on a class wide basis, the court is not convinced of the gain to be had from using the class action form. As the *Steering Committee* court noted, "Appellants argue, and Appellee appears to agree, that the issue of liability, i.e., Appellee's negligence or strict liability for improperly installing the valve and causing the fire, can be determined on a class-wide basis. Appellants' argument, however, does no more than prove that some common issues exist across the class. The predominance inquiry, however, is more rigorous than the commonality requirement." *Id.* at 603 (citing *Unger,* 401 F.3d at 320).

The court in *Steering Committee* did appear to accept that, had it been suggested to the district court, that court in its discretion could have bifurcated the trial and tried the causation issues class wide. *Id*. at 604-05. Such action is not mandated in this case however. Here, the individual liabilities of each defendant to each plaintiff causes the court to believe that even

though general liability may be a class wide issue, more specific liability questions will likely be very individualistic. For example, plaintiff alleges breaches of the duty to warn on the part of the individual defendants. Doc. 3 ¶ 18. However, whether that duty existed would vary amongst plaintiffs. Certainly, the court cannot say with certainty that the defendants had an affirmative responsibility to warn every person within the one mile radius regardless of their potential for exposure. Thus defendant could be found liable to one person within the class, but not to another. The same is true for other claims made against defendants, such as the claim there was a breached of a duty to put a shelter in place. *Id.* Because of such issues, even liability may be predominated by individual concerns.

> As the Eastern District of Louisiana recently observed:
>
>> Mass trials on the issue of "general" causation create substantial savings only when plaintiffs lose because this leads immediately to the dismissal of large numbers of mass tort claims . . . . Rarely, however, will a mass trial lead to the prompt entry of judgment in favor of a large group of plaintiffs against one or more defendants because even if the first jury finds, for example, that the defendant's product could have caused the plaintiff's injury, individual trials will still be necessary to determine specific causation, whether any affirmative defenses are available to the defendant, and the extent of the plaintiff's damages. Little or no time and expense will be saved in these individual trials by virtue of the preceding mass trial on general causation.

*In re Vioxx Products Liability Litigation*, 239 F.R.D. 450, 462 (E.D. La. 2006) (quoting Roger H. Trangsrud, Mass Trials in Mass Tort Cases: A Dissent, 1989 U. ILL. L. REV. 69, 79).

"Given the greater number of questions peculiar to the . . . class members, and to individuals within each category, and the significance of those uncommon questions, any overarching dispute about [liability and causation] cannot satisfy the Rule 23(b)(3) predominance standard." *Amchem Prods., Inc.*, 521 U.S. at 623, 117 S. Ct. at 2249, 188 L. Ed. 2d 689.

2. *Superiority*

Rule 23(b)(3) additionally requires the court to determine whether a class action is a superior device for fairly and efficiently resolving the controversy. Fed. R. Civ. P. 23(b)(3). Four factors should be considered by the court in determining whether a class action is superior: (1) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action. *Id.*

The Fifth Circuit advised the court on the impact of the predominance inquiry on superiority in mass tort cases, noting:

> A "mass accident" resulting in injuries to numerous persons is ordinarily not appropriate for a class action because of the likelihood that significant questions, not only of damages but of liability and defenses to liability, would be present, affecting the individuals in different ways. In these circumstances an action conducted nominally as a class action would degenerate in practice into multiple lawsuits separately tried.

*Steering Committee*, 461 F.3d at 604 (quoting Advisory Committee Note, Fed. R. Civ. P. 23(b)(3)). The *Steering Committee* court emphasized that one seeking class certification in this type of lawsuit must demonstrate "exceptional features that warrant departing from the general rule and treating it as a class action." *Id.*

The court again notes the similarity between this case and the *Steering Committee* case. In both cases, plaintiffs request certification of a geographically defined population alleged to have suffered various damages in tort as a result of exposure to a toxic substance. Doc. 46, at 1; *Steering Committee*, 461 F.3d at 600. As in that case, the court has available to it other methods

16

to carefully manage litigation, including the judicious use of consolidated summary judgments and other tools such as *Lone Pine* orders.[3] *Steering Committee*, 461 F.3d at 605.

In the instant case, as in *Steering Committee*, "the predominance of individual issues relating to the plaintiffs' claims for compensatory and punitive[4] damages detracts from the superiority of the class action device in resolving these claims." *Id.* at 604-05. Further, because other tools are available for streamlining litigation, the court does not find that the class action device is a superior method of adjudication. *Id.*

The court does not find that any "exceptional features" warrant departing from the general rule that this type of case is not appropriate for adjudication as a class action. *Id.* at 604. Thus, plaintiff has failed to satisfy the superiority requirement.

## V.
## CONCLUSION

For the foregoing reasons, it is recommended that plaintiff's Motion for Class Certification [Doc. 46] is DENIED.

---

[3] The Fifth Circuit aptly explains the *Lone Pine* order:

> *Lone Pine* orders, which derive their name from *Lore v. Lone Pine Corp.,* 1986 WL 637507 (Nov. 18, 1986), are pre-discovery orders designed to handle the complex issues and potential burdens on defendants and the court in mass tort litigation by requiring plaintiffs to produce some evidence to support a credible claim. *See Acuna v. Brown & Root Inc.,* 200 F.3d 335, 340 (5th Cir.2000) (discussing use of *Lone Pine* orders in mass tort litigation). The *Lone Pine* order issued in this case requires that individual plaintiffs each produce, depending on the type of injury alleged, either an affidavit from a qualified treating or other physician, or an affidavit from a qualified real estate appraiser or other real estate expert.

*Steering Committee v. Exxon Mobil Corp*, 461 F.3d 598, 604 n.2 (5th Cir. 2006).
[4] Plaintiff claims in the Motion for Class Certification that this is a negative value suit and there exist no significant additional damage awards such as punitive damages to turn the claims into positive value suits. Doc. 46, at 16. According to plaintiff, this rationale should compel the court to find that the class action is a superior device for litigation. *Id*. (citing *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 748 (1996)). The court is not persuaded by plaintiff's rationale. First, there is no indication that plaintiffs would not receive an award of punitive damages or that this suit would not be a positive value suit. After all, plaintiff notes in the Motion for Class Certification that relief is sought "to reduce the threat of future damages." Doc. 46, ¶ 3. Additionally, punitive damages are available with regard to the types claims made by plaintiffs for emotional distress, negligence, etc. *See* Doc. 3, ¶¶ 13-22, 28.

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, on January 19, 2009.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE